UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:04-CR-51-1F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| JUSTIN MCKEITHAN, | ) | |
| Defendant. | ) | |

This matter is before the court on the United States Probation Office's Amended Motion for Revocation of Supervised Release [DE-56]. At the initial revocation hearing held on March 14, 2013, McKeithan advanced the argument that the record of his state convictions, by itself, cannot support a finding that he violated the terms of his supervised release because he pleaded "no contest" to the North Carolina criminal charges. The court continued the March 14, 2013 hearing to give the parties an opportunity to brief the issue. Both parties have filed the requested briefing, *see* [DE-58, -62, -63], and the matter is ripe for disposition. For the reasons that follow, the court agrees that McKeithan's no contest plea is not an admission that he committed the charged offenses, and will allow an evidentiary hearing in which the Government must prove by a preponderance of the evidence that McKeithan engaged in criminal conduct while on supervised release.

## I. FACTUAL BACKGROUND

The court originally sentenced McKeithan to sixty months imprisonment and sixty months supervised release, after he pleaded guilty to Conspiracy to Distribute and Possess with Intent to Distribute More than Five Grams of Cocaine. McKeithan's supervised release began on

May 27, 2008. McKeithan's supervised release conditions include the standard condition that "[t]he defendant shall not commit another federal, state, or local crime." Judgment [DE-28] at 4; 18 U.S.C. § 3583(d). On or about February 22, 2010, McKeithan was charged in state court with First Degree Burglary, Assault with a Deadly Weapon Inflicting Serious Injury, two counts of felonious Intimidation of a Witness, misdemeanor Assault and Battery, Assault on a Female, and Financial Card Theft. The United States Probation Office promptly filed a motion to revoke McKeithan's supervised release. Mot. for Revocation of Supervised Release [DE-43].

On April 5, 2011, McKeithan pleaded no contest to Assault with a Deadly Weapon Inflicting Serious Injury and felonious Intimidating a Witness. The State dismissed the remaining charges as part of the plea agreement. Plea Agreement [DE-63-1]. Currently pending before the court is the United States Probation Office's Amended Motion for Revocation of Supervised Release [DE-56]. The motion for revocation states, "on April 5, 2011, the defendant was found guilty of Assault With a Deadly Weapon Inflicting Serious Injury and felonious Intimidating a Witness" and recommends that the term of supervision be revoked. *Id.* McKeithan faces a maximum sixty months imprisonment if the court finds he violated a condition of his supervised release.

## ANALYSIS

The issue presented by this case is whether the Government may rely solely on the no contest plea and the state court judge's finding that a factual basis existed for the plea to establish that McKeithan violated the terms of his supervised release.[1] Section 3583(e) of Title 18, United

---

[1] The court notes that McKeithan presented a significant amount of evidence regarding the incident that gave rise to the state charges at the March 14, 2013 initial revocation hearing. However, the court will not consider that evidence in this order because the court must first resolve the legal issue of

2

States Code, provides that the court may "revoke a term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e). Ordinarily, a state court judgment of conviction is sufficient to establish a violation of the condition that the defendant not commit another federal, state, or local crime. However, judgments of conviction pursuant to no contest or *Alford* pleas present some problems with this general rule because the Defendant who pleads *Alford*/no contest does not admit guilt. The Government contends, nevertheless, that the no contest plea and the state judge's finding that a factual basis existed for the plea establish by a preponderance of the evidence that McKeithan committed the state crimes.

McKeithan argues that his no contest plea did not contain an admission of guilt as to the underlying conduct comprising the state crimes. McKeithan notes that his supervised release condition reads "the defendant shall not *commit* another federal, state, or local crime," *see* Judgment [DE-28] at 4 (emphasis added), as opposed to "the defendant shall not be convicted of another crime." Because he has not admitted guilt or been found guilty of the underlying conduct, McKeithan argues that the Government may not rely on the state court convictions to establish a violation of his supervised release. McKeithan requests an evidentiary hearing, in which the Government must prove by a preponderance of the evidence that he committed the crimes to which he pleaded no contest.

---

the effect of a no contest plea in the context of a motion for revocation of supervised release. In light of the court's ruling herein and the fact the Government was not aware at the initial hearing that the no contest plea by itself could not establish a supervised release violation, the court will allow both parties to present evidence and argument regarding whether McKeithan engaged in criminal conduct at the April 30, 2013 hearing.

3

## A. Fourth Circuit Case Law on *Alford* and No Contest Pleas

The parties have not provided, and the court has not discovered, a Fourth Circuit case addressing the issue of whether a defendant's supervised release may be revoked when he enters a no contest plea to a criminal charge, based solely on the judgment of conviction and the accompanying finding that a factual basis existed for the plea. However, in *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010) and *United States v. Davis*, 679 F.3d 177 (4th Cir. 2012), the Fourth Circuit addressed the effect of *Alford* and no contest pleas[2] on sentencing enhancements. In *Alston*, the Government attempted to use a conviction obtained pursuant to an *Alford* plea as a predicate conviction under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), which, if allowed, would have substantially increased the defendant's sentence. *Alston*, 611 F.2d at 220. The ACCA provides for sentencing enhancements if a defendant has "three previous convictions . . . for a violent felony or a serious drug offense, or both . . . ." § 924(e)(1). The Maryland state criminal statute for Assault encompassed several distinct crimes, some of which were violent felonies for purposes of the ACCA and some of which were

---

[2] For purposes of this case, the court finds no functional difference between a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) and a "no contest" plea. In an *Alford* plea, the Supreme Court approved the process whereby a criminal defendant "voluntarily, knowingly, and understandingly consent[s] to the imposition of a prison sentence even if [the defendant] is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37. Similarly, a no contest plea in North Carolina indicates the defendant "did not admit he had committed [the] crime" but nevertheless consented to punishment as if he were guilty. *State v. Outlaw*, 326 N.C. 467, 469, 390 S.E.2d 336, 337 (N.C. 1990); *see also Alford*, 400 U.S. at 35-37 & n.8 (discussing the history of no contest pleas and noting the similarity between Alford's plea and a no contest plea); *Davis*, 679 F.3d at 186 (explaining that "under North Carolina law (in contrast to some other jurisdictions), a 'no contest' plea is treated precisely as an *Alford* plea under the circumstances here" and collecting North Carolina case law on this point); *State v. Alston*, 139 N.C. App. 787, 792, 534 S.E.2d 666, 669 (2000) ("[A]n '*Alford* plea' constitutes 'a guilty plea in the same way that a plea of *nolo contendere* or no contest is a guilty plea.'" (quoting *State ex rel. Warren v. Schwarz*, 219 Wis.2d 615, 631, 579 N.W.2d 698, 706 (1998))).

4

not. *Alston*, 611 F.2d at 222-23. The Fourth Circuit explained that the facts stated in the prosecutor's proffer[3] were not sufficient to establish the violent nature of the predicate conviction, because the defendant's *Alford* plea did not contain an admission as to those facts:

> [A]lthough a court presented with an *Alford* plea "must make a careful inquiry into the factual basis" for the plea before accepting it, *United State v. Morrow*, 914 F.2d 608, 613 (4th Cir. 1990), "the distinguishing feature of an *Alford* plea is that the defendant does *not* confirm" that factual basis. . . . And it is this same feature that makes it clear that, under *Shepard*, the prosecutor's proffer of the factual basis for an *Alford* plea may not later be used by a sentencing court to identify the resulting conviction as an ACCA predicate. *Shepard* held, after all, "that enquiry under the ACCA to determine whether a plea of guilty . . . *necessarily admitted* elements of [a qualifying] offense is limited to the terms of the charging document, the terms of a plea agreement or *transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant*, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26 . . . (emphasis added).

*Alston*, 611 F.3d at 227 (quoting *Morrow*, 914 F.2d at 613; *United States v. Shepard*, 544 U.S. 13, 26 (2005)). Thus, at least in the context of an ambiguous state statute serving as a predicate for an ACCA enhancement, *Alston* stands for the principal that where the defendant entered an *Alford* plea and there is no evidence he admitted the facts contained in the proffer, the Government may not use the proffer to establish the violent nature of the purported predicate conviction. *Id.*

In *Davis*, the Fourth Circuit considered whether a no contest plea to a North Carolina robbery charge, by itself, could establish a robbery cross-reference (and thus, a sentencing enhancement in federal court) under the Sentencing Guidelines. *Davis*, 679 F.3d at 179-80. Under the Government's version of the facts, the robbery cross-reference applied; but under the Defendant's version, the defendant should have been sentenced pursuant to the larceny cross-

---

[3] Typically, the factual basis for a no contest or *Alford* plea is established by the prosecutor's proffer of the evidence that he would present if the matter went to trial. *Alston*, 611 F.3d at 220.

reference. *Id.* at 179-80, 182, 185. Applying the *Alston* reasoning, the Fourth Circuit remanded for further factual development. *Id.* at 187. The Fourth Circuit explained,

> "We find, however, the issue in *King* (*i.e.*, what constitutes an "adjudication" giving rise to a prior conviction for computing *criminal history*) easily distinguishable from the issue here, namely, whether Davis committed "another offense" . . . . Davis's "no contest" plea to common law robbery could not alone provide the necessary evidentiary basis to support application of the robbery cross-reference."

*Id.* at 187.

McKeithan suggests this reasoning should be extended to supervised release revocations. He argues that, as in *Alston*, he has not admitted to any of the facts contained in the prosecutor's proffer, and thus the state convictions obtained pursuant to his no contest plea are not sufficient to show that he "committed" the state crimes.

The Government launches two primary arguments against McKeithan's reliance on *Alston* and *Davis*. The first involves the factual issue of whether McKeithan admitted to any of the facts contained in the prosecutor's proffer. In *Alston*, the Fourth Circuit placed considerable emphasis on the fact that Alston did not admit to any of facts contained in the prosecutor's proffer:

> The transcript from Alston's plea hearing, however, revealed that Alston's conviction was based on an *Alford* plea during which Alston did not adopt or accept the facts proffered by the government. Indeed, when Alston elected to tender an *Alford* plea, the state judge explained to him that "[an *Alford* plea] [i]s when you say, 'I want the deal. I've talked it over with my lawyer. I know what the witnesses are going to say. I think it's in my best interests to take the deal rather than go to trial and run the risk I might get the maximum penalty. So I want the deal, but I don't want to say I did the crime.' " After ascertaining that Alston wished to proceed with an *Alford* plea, the state court instructed Alston to "have a seat because I still have to make sure that the State can prove the charges against you." The court then asked the prosecutor, "What would the witnesses say, what would the State prove if there was a trial?" After the prosecutor outlined the evidence she would have introduced at trial, which indicated that Alston had pointed a gun at three victims and stated that he would kill them all, Alston's counsel "agree[d] that if the case were called, the State's witnesses would

6

testify to that effect."

*Alston*, 611 F.3d at 223. By contrast, the Government argues that McKeithan admitted the facts in the prosecutor's proffer: "the Court should find a violation based upon [the fact that] the defendant himself acknowledged that such a basis existed." Government's Reply to Def.'s Mem. of Law Regarding Effect of No Contest Plea [DE-63] at 10.

The court agrees with the Government that if McKeithan admitted or accepted the facts contained in the prosecutor's proffer, then the state court records are sufficient to establish that he committed the state crimes. Accordingly, the court turns to the written plea agreement and the transcript of the plea colloquy, submitted as attachments to the Government's brief.

These documents do not conclusively show that McKeithan admitted the facts contained in the prosecutor's proffer. The written plea agreement, [DE-63-1] at 8, contains the following language: "Do you agree that there are facts to support your plea? [McKeithan's Answer]: Yes." This language, contained on a pre-printed form document signed by every Defendant who pleads guilty in North Carolina, is not sufficient to show that McKeithan admitted the facts contained in the prosecutor's proffer, or that he admitted committing the state crimes to which he was pleading. Instead, the court interprets this language as an agreement that the prosecutor had witnesses who would testify to facts indicating McKeithan was guilty of the state charges. *Alston*, 679 F.3d at 226 ("[T]he prosecutor's proffer of what the State would have proved at trial does not amount to an admission or acceptance of the facts by the defendant."). By his no contest plea, McKeithan did not admit to those facts and presumably he believed the prosecutor's witnesses were not credible/mistaken and that he had contradictory evidence. Agreeing that "there are facts to support [McKeithan's] plea" potentially could be interpreted as an admission

7

to the truth of those facts, but it also could be interpreted as an acknowledgment that the prosecutor has witnesses who will testify to facts that support the charges. In the context of a no contest plea, in which the Defendant does not admit guilt, *id.* at 226, the court sides with the latter interpretation.

The transcript of the plea colloquy is similarly ambiguous. The relevant exchange proceeded as follows:

> [The Court]: Do you agree that there are facts to support your plea and do you consent to the Court hearing a summary of the evidence? [McKeithan]: Yes, sir.
> . . . .
> [The Court]: That means the State's attorney is going to stand up, and possibly your attorney, will give me the facts of this case, and you are agreeing that there are sufficient facts to support your pleas in this case, *in other words, for me to find as based on the representation by the State's attorney that you – crimes were committed and you committed those crimes*, that being assault with a deadly weapon inflicting serious injury and intimidating a witness. Do you Understand that?
>
> (The Defendant conferred with his attorney.)
>
> [The Court]: *You may or may not agree with the facts, but you agree that the State has those facts based on the discovery and information given to you*?
>
> [McKeithan]: Yes, sir.
>
> [Prosecutor gives lengthy statement of the facts]
>
> [Defense counsel]: Your Honor, I could stand up here all day and rebut every one of these allegations, based on what happened. But from the standpoint of entry of this plea, probably not worthwhile doing that at this juncture.

Transcript of McKeithan's Plea Colloquy [DE-63-2] at 9-18 (emphasis added). In the plea colloquy, McKeithan agreed that the "representation by the State's attorney" indicated that he committed the charged state crimes and that "the State has those facts based on the discovery and information given to you." As in *Alston*, the court assumes McKeithan was agreeing that the

8

state had witnesses/other evidence that, if presented in isolation and without any challenge from McKeithan, would indicate he committed the crimes. *Alston*, 679 F.3d at 223. However, the transcript does not reveal that McKeithan personally admitted he engaged in any of the conduct recited by the prosecutor. As McKeithan's lawyer in state court represented, "Your Honor, I could stand up here all day and rebut every one of these allegations . . . ." Transcript of McKeithan's Plea Colloquy [DE-63-2] at 18.

For the foregoing reasons, the court rejects the Government's argument that McKeithan admitted the factual basis offered by the prosecutor. In the context of a no contest plea, where the Defendant does not admit guilt, ambiguous language indicating McKeithan agreed there were facts to support the plea is not sufficient to demonstrate that McKeithan committed a state crime. As the *Alston* court explained in the context of an *Alford* plea,

> In entering an *Alford* plea, the defendant waives a trial and accepts punishment, *but he does not admit guilt*, and the prosecutor's proffer of what the State would have proved at trial does not amount to an admission or acceptance of the facts by the defendant. Rather, it serves the role of providing the court with a basis by which to evaluate the voluntariness of the defendant's plea. *See Alford*, 400 U.S. at 38.

*Alston*, 611 F.3d at 226.

The Government also argues that *Alston* and *Davis* are distinguishable because "their focus was not on a court's assessment of *whether* the defendant at issue committed a crime, but on the *manner* in which he committed it." Government's Reply to Def.'s Mem. of Law Regarding Effect of No Contest Plea [DE-63] at 2. With respect to *Alston*, the Government cites to the language, "the judge's evaluation of the prosecutor's proffer was concerned solely with whether the defendant's guilty plea was voluntary and with whether the government had sufficient evidence to support the charge, not with the truth of the Government's account of how

the offense had been committed," *Alston*, 611 F.3d at 227, to support its argument that "the [*Alston*] defendant's *Alford* plea appeared to raise no question whatsoever for the *Alston* court about whether or not Alston had committed second-degree assault of some kind." Government's Reply to Def.'s Mem. of Law Regarding Effect of No Contest Plea [DE-63] at 4.

But that question—whether Alston committed the crime of second degree assault or not—was not before the *Alston* court. Rather, as the Government's own quoted language explains, "[t]he judge's evaluation of the prosecutor's proffer was concerned solely with whether the defendant's guilty plea was voluntary and with whether the government had sufficient evidence to support the charge, not with the truth of the Government's account of how the offense had been committed." *Alston*, 611 F.3d at 227. The *Alston* court did not address the truth of the proffer, which was the only evidence that possibly could have demonstrated Alston committed the state crime. The state court's finding that a factual basis exists consists entirely of an acceptance of the prosecutor's version of the facts. The defendant is not allowed to rebut that evidence or offer his version of the facts. The fact that the precise issue in *Alston* was the manner in which Alston committed the charged offense does not change the legal conclusion that when a defendant enters a no contest plea, he does not admit guilt, and the only evidence tending to show that he "committed" the state crime is the proffer by the prosecution, a verison of the facts to which the defendant has not admitted and should not be held accountable for in subsequent proceedings.

As to *Davis*, the Government similarly argues that "there was no issue whatsoever about whether or not Davis's no contest plea meant that he had committed a crime in *some* fashion." Government's Reply to Def.'s Mem. of Law Regarding Effect of No Contest Plea [DE-63] at 5.

10

Case 7:04-cr-00051-F  Document 67  Filed 04/22/13  Page 10 of 18

As in *Alston*, however, the question of whether Davis committed a robbery was not before the *Davis* court. And, contrary to the Government's argument, the *Davis* court did distinguish between the effect of a no contest plea where the question is whether the defendant has previously been convicted of a crime, and the effect of a no contest plea where the question is whether the defendant committed the crime: "We find, however, the issue in *King* (*i.e.*, what constitutes an 'adjudication' giving rise to a prior conviction for computing *criminal history*) easily distinguishable from the issue here, namely, whether Davis committed 'another offense' . . . ." *Davis*, 679 F.3d at 187. While it is true the ultimate issue in *Davis* was the manner in which Davis committed the robbery he pleaded to, that does not change the Fourth Circuit's conclusion that no contest pleas should not be used when the question is whether the defendant "committed" a previous offense. *Id.*

In sum, the court rejects the Government's argument that the Fourth Circuit's discussion of *Alford*/no contest pleas in *Alston* and *Davis* does not apply in the context of a supervised release revocation where the issue is whether the defendant committed another federal, state, or local crime. *Alston* and *Davis* essentially stand for the idea that where a defendant enters an *Alford*/no contest plea, he does not admit guilt, and the adjudication of guilt by the state court cannot serve as evidence that he actually engaged in the conduct comprising the state crime, unless he admitted to the facts contained in the proffer at the plea hearing. *Alston*, 611 F.3d at 226 ("In entering an *Alford* plea, the defendant waives a trial and accepts punishment, *but he does not admit guilt*, and the prosecutor's proffer of what the State would have proved at trial does not amount to an admission or acceptance of the facts by the defendant."); *Davis*, 679 F.3d at 187 (finding an no contest plea cannot answer the question "'What did Davis do?' (as shown

11

by a preponderance of the evidence)"). Both *Alston* and *Davis* go into great detail about the legal effect of *Alford*/no contest pleas, and the Fourth Circuit's reasoning holds up regardless of whether the issue is the manner in which the particular crime was committed (the precise issue in *Alston* and *Davis*) or whether a particular crime was committed at all (the issue in McKeithan's case).

## B. The effect of *Alford*/no contest pleas in North Carolina

The Government also makes the argument that the legal effect of an *Alford*/no contest plea is determined by state law, and the court should therefore look to how North Carolina law treats *Alford*/no contest pleas. This approach has been adopted in both the Third and Ninth Circuits. *See United States v. Poellnitz*, 372 F.3d 562, 567 (3d Cir. 2004); *United States v. Verduzco*, 330 F.3d 1182, 1185 (9th Cir. 2003). For example, in *Verduzco*, the Ninth Circuit cited to a California statute that provided "[t]he legal effect of [a nolo contendere] plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty *for all purposes*." *Verduzco*, 330 F.3d at 1185 (emphasis added). Pursuant to the "for all purposes" language, the *Verduzco* court held that a no contest plea, by itself, could establish a supervised release violation. *Id.* at 1185-86.

The Government also points to *United States v. McGill*, No. 01-00072-CR, 2009 WL 961142 (S.D. Fla. April 8, 2009). In *McGill*, the District Court for the Southern District of Florida addressed whether a no contest plea alone can establish that the defendant committed a state crime while on supervised release. The *McGill* court's approach is instructive:

> If, on the one hand, the forum state does not recognize a no contest plea as an admission of guilt, then the Judgment of Conviction based on the plea cannot be given any evidentiary weight at the evidentiary hearing [on the supervised release violation]; but, on the other hand, if the forum state considers a no contest plea as an

12

admission of the underlying conduct, then the Judgment of Conviction is "entitled to whatever weight the District Court [chooses] to give it" in determining whether the defendant actually committed the state crime of which he was convicted.

*Id.* at *7 (quoting *Poellnitz*, 372 F.3d at 567). Because the Florida Supreme Court had held that a no contest plea alone could establish a probation violation based on the state court judge's finding that a factual basis existed for the plea, the *McGill* court held that a no contest plea could also support revocation of supervised release in federal court.[4] *Id.* at *7-8.

The North Carolina law on this issue is not entirely clear. The parties have not presented, and the court has not found, a North Carolina case holding that a conviction pursuant to a no contest plea alone can establish a probation violation. And even if such a case existed, the supervised release condition at issue in this case states that "the defendant shall not commit another federal, state, or local crime." The court has no way of knowing, on the record before it, whether the corresponding condition of probation in North Carolina reads "the defendant shall not commit another federal, state, or local crime" or whether it reads "the defendant shall not be convicted of another federal, state, or local crime." As the discussion below indicates, these are two separate questions. The court is therefore tasked with the challenge of predicting how North Carolina courts would treat a no contest plea in a case where a probationer is charged with violating a condition of probation that reads "the defendant shall not commit another federal, state, or local crime."

---

[4] The court notes, parenthetically, that the Magistrate Judge also held an evidentiary hearing in *McGill*, in which the Government essentially reproduced the evidence that McGill committed the state crime. *McGill*, 2009 WL 961142, at *8-9. The *McGill* court held this hearing because it needed to resolve some additional issues regarding McGill's violations. *Id.* In adopting the Magistrate Judge's Memorandum and Recommendation, the District Judge noted that the evidence presented at the hearing also supported the holding that McGill committed the state crimes to which he pleaded no contest. *Id.* at *2-3.

13

The North Carolina statute on no contest pleas does provide that the state court judge must find a factual basis exists for the plea and that a defendant who pleads no contest will be treated as guilty:

> [t]he judge may accept the defendant's plea of no contest even though the defendant does not admit that he is in fact guilty if the judge is nevertheless satisfied that there is a factual basis for the plea. The judge must advise the defendant that if he pleads no contest he will be treated as guilty whether or not he admits guilt.

N.C. Gen. Stat. § 15A-1022(d). In addition, North Carolina courts have consistently held that a conviction pursuant to a no contest plea may be used against the defendant in subsequent proceedings. In announcing this rule, the North Carolina Supreme Court reasoned that "[w]hen a plea of no contest is now entered there must be a finding by a court that there is a factual basis for the plea. This finding and the entry of a judgment thereon constitute an adjudication of guilt [and] [t]his adjudication would be a conviction . . . ." *State v. Outlaw*, 326 N.C. at 469, 390 S.E.2d at 337; *see also Davis v. Hiatt*, 326 N.C. 462, 466, 390 S.E.2d 338, 340 (N.C. 1990) ("[North Carolina General Statute § 15A-1022(c)] has changed the rule that a court may not adjudicate the defendant's guilt on a plea of no contest. Before a court may now accept a plea of no contest it must make a finding that there is a factual basis for the plea. This amounts to an adjudication of guilt.").

As McKeithan points out, however, the question in these cases was whether a conviction pursuant to a no contest plea may be used in a subsequent proceeding. In these cases, the relevant administrative or statutory provision provided that a conviction could be used in the subsequent proceeding. *Outlaw*, 326 N.C. at 469; 390 S.E.2d at 337-38 (examining the effect of a no contest plea where Rule 609(a) of the North Carolina Rules of Evidence allows impeachment by evidence that the defendant "has been convicted of a crime"); *Hiatt*, 326 N.C. at

14

465-66; 390 S.E.2d at 340 ("The substantive question in this case is whether the judgment entered on a plea of no contest to a previous charge of driving with a blood alcohol content of .10 percent or more may be used *as a prior conviction* by the Department of Motor Vehicles for purposes of revoking a driver's license.") (emphasis added); *State v. Jackson*, 128 N.C. App. 626, 629-30, 495 S.E.2d 916, 919 (N.C. App. 1998) (holding a judgment entered pursuant to a no contest plea qualifies as a conviction for purposes of the habitual felon statute because the statute defines the term "habitual felon" as "any person who has been convicted of or pled guilty to three felony offenses . . . ." (quoting N.C. Gen. Stat. § 14-7.1)). By way of contrast, the Government in this case requests that the court use the prosecutor's proffer and the fact that the no contest plea includes an "adjudication of guilt" based on the prosecutor's proffer to establish that McKeithan committed a state crime.

While the court agrees that this is a close case, the court declines to the extend the *Hiatt* and *Outlaw* reasoning to supervised release violations where the condition reads "the defendant shall not commit another federal, state, or local crime." Three reasons persuade the court that extending *Hiatt* and *Outlaw* in the present context is not warranted. The first is that *Outlaw* itself distinguished the effect of a no contest plea where the question is whether the defendant has been previously convicted of a crime, and the effect of a no contest plea where the question is whether the defendant committed that crime:

> This case [in which the North Carolina Supreme Court held that a conviction obtained pursuant to a no contest plea may be used to impeach a defendant who testifies in a subsequent proceeding] is not inconsistent with *State v. Hedgepeth*, 66 N.C. App. 390, 310 S.E.2d 920 (1984). In that case it was held to be error for the State to be allowed to ask the defendant on cross-examination whether he had pled no contest to a charge of assault with intent to commit rape. This was an improper question because the defendant by his plea of no contest did not admit he had

15

committed this crime. If the prosecuting attorney had asked the defendant if he had
been convicted of the crime this would have been a proper question.

*State v. Outlaw*, 326 N.C. at 469, 390 S.E.2d at 338; *see also McGill*, 2009 WL 961142, at *7 ("If . . . the forum state does not recognize a no contest plea as an admission of guilt, then the Judgement of Conviction based on the plea cannot be given any evidentiary weight . . . ."). If the State may not ask whether a person "committed" a crime to which he pleaded no contest, then arguably under North Carolina law the State may not demonstrate that a defendant who pleaded no contest violated a condition of probation that provides "the defendant shall not commit another federal, state, or local crime."

Second, the Government essentially argues in this case that a court's finding that "a factual basis for the plea exists" is equivalent to a finding that a defendant committed a state crime in violation of his supervised release conditions. But as discussed above, the "factual basis" submitted with an *Alford*/no contest plea is simply a recitation of the Government's evidence, which is in turn accepted by the court as the factual basis.[5] *Davis*, 679 F.3d at 186 ("As mentioned, unlike the law in some states, in North Carolina, a defendant who pleads 'no contest' does not admit any facts alleged in the charging document."); N.C. Gen. Stat. § 15A-1022(c) ("The judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon information including but not limited to: (1) A statement of facts by the prosecutor."). The defendant is not provided any opportunity to rebut that evidence or to present his own version of the facts. Under these

---

[5] As explained more fully above, if the defendant accepts or admits the proffer, then we have a different case.

16

circumstances, the court concludes that the state court judge's finding that a factual basis exists for the plea is not sufficient, by itself, to show that McKeithan committed a state crime.

Finally, the court is concerned about the ramifications of the Government's position that the prosecutor's proffer and its acceptance by the state court conclusively establishes that a defendant committed a state crime. A defendant does not admit guilt when he enters an *Alford*/no contest plea. *Alston*, 611 F.3d at 226-27; *Outlaw*, 326 N.C. at 469; 390 S.E.2d at 338. Some limitation must exist on how that plea can be used in subsequent proceedings. Otherwise, the defendant derives no benefit from pleading no contest and he should simply plead guilty. The court finds that excluding use of no contest pleas where the defendant is alleged to have "committed" a state crime is a reasonable limitation. The court notes that this decision only provides the defendant with an opportunity to rebut the Government's evidence that he committed a state crime. Here, it is entirely possible that the court, after consideration of the Government's evidence, may still find McKeithan violated the terms of his supervised release.

The court recognizes that this is a close case. The fact that North Carolina law treats a conviction obtained pursuant to a no contest plea as an "adjudication of guilt," *Outlaw*, 326 N.C. at 469, 390 S.E.2d at 337-38, suggests that the North Carolina courts may disagree with the court's holding. But in the absence of case law directly on point, the court finds the most prudent course is to give the Defendant an opportunity to rebut the evidence that he committed the crime.

Accordingly, at the revocation hearing on April 30, 2013, the Government must show by a preponderance of the evidence that McKeithan committed the two state crimes he pleaded no contest to: Assault with a Deadly Weapon Inflicting Serious Injury and felonious Intimidating a Witness. The court notes that McKeithan presented a fair amount of evidence at the March 14,

17

2013 hearing. In light of the court's ruling and in fairness to the Government, the court will allow both parties to present evidence and argument regarding whether McKeithan committed criminal conduct while on supervised release at the April 29, 2013 hearing. McKeithan is advised that the court cannot recall all the details of the evidence presented at the March 14, 2013 hearing and the most prudent course is for him to re-introduce that evidence. Lastly, the court recognizes that this order has been entered approximately seven days before the revocation hearing. This may not be enough time for the Government to gather all its evidence and/or witnesses. Therefore, the court is open to continuing this case to the May 13, 2013 term of court.

## CONCLUSION

For the foregoing reasons, McKeithan's oral motion for permission to put on evidence regarding McKeithan's supervised release violation and the written memorandum of law in support of that motion [DE-62] are ALLOWED. At the Supervised Release Revocation hearing currently scheduled for April 30, 2013, the Government must show by a preponderance of the evidence that McKeithan committed the offenses he pleaded no contest to in state court.


SO ORDERED
This the 22 day of April, 2013.

                                                              JAMES C. FOX
                                                            Senior United State District Judge